UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL STENGER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:14CV01655 AGF |
| | ) |
| BI-STATE DEVELOPMENT AGENCY OF MISSOURI/ILLINOIS METROPOLITAN DISTRCIT d/b/a METRO, | ) ) ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| AMALGAMATED TRANSIT UNION, DIVISION 788, | ) ) |
| | ) |
| Intervenor Defendant. | ) |

**MEMORANDUM AND ORDER**

This somewhat unusual case is before the Court on the motion of Intervenor Defendant Amalgamated Transit Union, Local 788 ("Local 788") to dismiss the lawsuit filed by Plaintiffs, numerous individual "1A MAT Mechanics" employed by Defendant Bi-State Development Agency of Missouri/Illinois Metropolitan District d/b/a Metro ("Metro"). Plaintiffs work at Metro facilities in Missouri and Illinois, and are members of Local 788. They seek a declaratory judgment ordering Metro to "adopt a comprehensive framework for collective bargaining as historically maintained by the National Labor Relations Board, Missouri Board of Mediation and Illinois Labor

Relations Board" so that Plaintiffs will be able to separate from Local 788 as their union (and form a separate bargaining unit). Local 788 argues that this action must be dismissed because the statutory provision that Plaintiffs assert entitles them to the relief sought, Section 13(c) of the Urban Mass Transportation Act ("UMTA"), 49 U.S.C. §5333(b), does not create a federal right of action of the sort Plaintiffs are pursuing. For the reasons set forth below, Local 788's motion to dismiss shall be granted.

## BACKGROUND

Section 13(c) of the UMTA conditions federal funding for transit authorities on "the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise" and on the "continuation of existing collective bargaining with employees." 49 U.S.C. § 5333(b).[1] Metro was created by an interstate compact pursuant to the statutes of Missouri

---

[1] Section 5333(b) provides as follows:

(b) Employee protective arrangements.-- (1) As a condition of financial assistance under [the Act], the interests of employees affected by the assistance shall be protected under arrangements the Secretary of Labor concludes are fair and equitable. The agreement granting the assistance . . . shall specify the arrangements.

(2) Arrangements under this subsection shall include provisions that may be necessary for --

    (A) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise;

    (B) the continuation of collective bargaining rights;

    (C) the protection of individual employees against a worsening of their positions related to employment;

2

and Illinois in 1949, Mo. Rev. Stat. § 70.370; 45 Ill. Comp. Stat. 100/1, and was approved by the United States Congress pursuant to the Compact Clause of the United States Constitution. Metro's purpose is "to provide a unified mass transportation system" for the bi-state region. *Bartlett v. Bi-State Dev. Agency*, 827 S.W.2d 267, 269 (Mo. Ct. App. 1992). "Entities created by interstate compacts have a unique legal status. Bi-state entities 'are creations of three discrete sovereigns: two States and the federal Government.'" *KMOV TV, Inc. v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 625 F. Supp. 2d 808, 811 (E.D. Mo. 2008) (quoting *Hess v. Port Auth. of Trans-Hudson Corp.*, 513 U.S. 30, 40 (1994)).

The compact creating Metro does not mention collective bargaining rights; nor does it incorporate by reference the public sector labor laws of either Missouri or Illinois, or federal labor law. The parties agree that the National Labor Relations Act, the Missouri Public Sector Labor Law, and the Illinois Public Labor Relations Act do not apply to Metro. It is undisputed that the parties have for decades engaged in a pattern of bargaining resulting in successive collective bargaining agreements ("CBAs"). The current CBA recognizes Local 788 as the exclusive bargaining representative of various Metro employees including the 1A MAT Mechanics. In October 2013, a petition signed by 178 of the 272 1A MAT Mechanics asked Metro's Board of Commissioners "to adopt

---

(D) assurances of employment to employees of acquired public transportation systems;

(E) assurances of priority of reemployment of employees whose employment is ended or who are laid off; and

(F) paid training or retraining programs.

a framework by which [the 1AMAT Mechanics] could exercise the same collective bargaining rights as other private and public sector employees in the states of Missouri and Illinois." (Am. Compl., Doc. No. 11 at 8.) Metro refused this request, whereupon Plaintiffs filed this action in this Court.

Plaintiffs assert in their amended complaint that they do not have the same working conditions, skills and job requirements, and seniority lists as other Metro employees represented by Local 788. Plaintiffs assert that "Plaintiffs and Metro have a legally protectable interest in Metro meeting its obligation to preserve, protect and continue Plaintiffs' collective bargaining rights by establishing a framework for allowing the Plaintiffs to exercise the same collective bargaining rights afforded all other private and public employees employed in the states of Missouri and Illinois." *Id*. at 9. As noted above, they ask the Court to order that Metro "adopt a comprehensive framework for collective bargaining as historically maintained by the National Labor Relations Board, Missouri Board of Mediation and Illinois Labor Relations Board." *Id*.

Local 788, which was granted leave to intervene in the action, argues that the case must be dismissed for failure to state a claim, as Plaintiffs have no federal right of action under Section 13(d). In response, Plaintiffs argue that cases finding no federal right of action under Section 13(d) are not applicable because Plaintiffs are not asking the Court "to grant them any such specific relief" but rather they are "simply ask[ing] the Court to interpret, or set forth, Metro's obligation under Section 13(c) to protect and continue the collective bargaining rights of the Plaintiffs." (Doc. No. 22 at 2.) Plaintiffs ask the Court

to find that an implied right of action exists here under Section 13(c) because Metro is not subject to the labor laws of any state.

## DISCUSSION

The United States Supreme Court held in *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, AFL-CIO-CLC*, 457 U.S. 15 (1982), that Section 13(c) did not create a federal cause of action for a union to enforce a CBA with a transit authority receiving federal funds. The Supreme Court explained that the precise question before it was not whether the union had a private right of action under Section 13(c), but rather whether the union's contract action was a federal cause of action by virtue of Section 13(c), as opposed to a state cause of action. *Id*. at 21. Upon examination of the language of Section 13(c) and its legislative history, the Court concluded that "Congress intended that labor relations between transit workers and local governments would be controlled by state law." *Id.* at 24.

> Congress made it absolutely clear that it did not intend to create a body of federal law applicable to labor relations between local governmental entities and transit workers. Section 13(c) would not supersede state law, it would leave intact the exclusion of local government employers from the National Labor Relations Act, and state courts would retain jurisdiction to determine the application of state policy to local government transit labor relations. . . . Congress designed § 13(c) as a means to accommodate state law to collective bargaining, not as a means to substitute a federal law of collective bargaining for state labor law.

*Id.* at 27-28.

In *Burke v. Utah Transit Authority & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006), the Tenth Circuit held that light rail employees wishing to form a bargaining unit separate from the existing unit did not state a federal claim under Section 13(c) against a

recipient of transit funds. Nothing in *Burke*, or in *Jackson Transit Authority*, or any other case cited by Plaintiffs or found by the Court, supports Plaintiffs' contention that Section 13(c) does create a federal right of action, such as the one advanced here, where no state labor law governs. Nor is the Court persuaded that an implied federal right of action for the relief Plaintiffs seek exists under Section 13(c). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) (holding that the provision of the Family Educational Rights and Privacy Act prohibiting federal funding of educational institutions that had a policy or practice of releasing education records to unauthorized persons did not create an implied private right of action; citing other statutes found not to confer an implied private right of action).

Section 13(c) has no "rights creating language," in other words, text framed in terms of the individuals who benefit, rather than the persons or institutions that are regulated, a touchstone in *Gonzaga*'s analysis. *See Gonzaga*, 536 U.S. at 287 ("Statutes that focus on the person regulated rather than the individuals protected" do not tend to create enforceable rights.). Further, the statutory language manifests an "aggregate focus," instead of being "concerned with whether the needs of any particular person have been satisfied," another *Gonzaga* touchstone. *Id*. at 288. That Plaintiffs seek declaratory relief does not change the conclusion that no federal cause of action exists, as the Declaratory Judgment Act is procedural and does not expand federal court jurisdiction. *See Dakota, Minn. & E. R.R. Corp. v. Schieffer*, 711 F.3d 878, 881 (8th Cir. 2013).

The states of Missouri and Illinois chose not to afford Metro workers enforceable collective bargaining rights, and this Court finds no basis for it to impose "a framework" upon Metro that creates new substantive rights for Metro workers. Plaintiffs' recourse, if any, may be with the state legislatures.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Intervenor Defendant's motion to dismiss for failure to state a claim is **GRANTED**. (Doc. No. 16.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 13th day of January, 2015.